**No. 21-10376**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**

**v.**

**MICHAEL KAIL,
Appellant.**

_____

On Appeal from the United States District Court
for the Northern District of California
No. CR-18-00172
Hon. Beth Labson Freeman

_____

**PETITION FOR PANEL REHEARING AND/OR REHEARING EN BANC**

_____

Lisa A. Mathewson
Mathewson Law LLC
1617 John F. Kennedy Blvd., Ste. 2027
Philadelphia, PA 19109
(215) 399-9592
lam@mathewson-law.com

*Attorney for Appellant Michael Kail*

## **TABLE OF CONTENTS**

Table of Authorities ................................................................................................ ii

Petition for Rehearing .............................................................................................. 1

Required Statement Under Fed. R. App. P. 40(b) ........................................... 6

Legal and Factual Background ............................................................................... 7

Grounds for Rehearing ............................................................................................ 8

I.    The Panel splits with the Eleventh Circuit by tolerating an
      ambiguity in the instruction defining "bribes or kickbacks," and
      affirms even though the instructions permitted conviction on a
      theory that contravenes *Skilling*. ................................................................ 8

II.   The Panel approves the honest-services fraud instructions even
      though the district court expressly declined to require a
      misrepresentation to the alleged victim, and deliberately injected
      "vague[ness]" into the materiality element, contravening Circuit
      and Supreme Court precedent .................................................................. 10

III.  The Panel contravenes binding precedent by deeming snippets of
      statutory language sufficient to charge property fraud, and by
      deeming the factual allegations a valid property-fraud theory.  It
      also fails entirely to address the grand-jury presentment and due
      process points Mr. Kail raises under the Fifth Amendment. ....................... 13

Conclusion.................................................................................................................. 16

Required Certifications ......................................................................................... 17

Memorandum Opinion – Not for Publication (April 15, 2025) ................ Exhibit A

## TABLE OF AUTHORITIES

### Cases

*Hamling v. United States*, 418 U.S. 87 (1974) .......................................................... 4, 6, 13

*Kelly v. United States*, 590 U.S. 391 (2020) ......................................................................14

*Kousisis v. United States*, 605 U.S. __, 145 S. Ct. 1382 (2025)..................................14

*Russell v. United States*, 369 U.S. 749, 763 (1962) .................................................. 13, 15

*Skilling v. United States*, 561 U.S. 358 (2010)...........................................3, 6, 8, 10, 14

*United States v. Aunspaugh*, 792 F.3d 1302 (11th Cir. 2015).....................3, 6, 8, 9

*United States v. Lane*, 765 F.2d 1376 (9th Cir. 1985)...................................................13

*United States v. Lew*, 875 F.2d 219 (9th Cir. 1989) ..................................................6, 11

*United States v. Milovanovic*, 678 F.3d 713 (9th Cir. 2012) (en banc) ...... 6, 11, 12

### Other Authorities

18 U.S.C. §1341.............................................................................................................1, 7

18 U.S.C. §1343.............................................................................................................1, 7

18 U.S.C. §1346.............................................................................................................1, 7

18 U.S.C. §1957............................................................................................................... 7

26 U.S.C. §4941(a)...........................................................................................................10

Calif. Corp. Code §5233(a) ...........................................................................................10

Fed.R.App.P. 40(b)........................................................................................................ 6

U.S. Const., amend. V..................................................................................... 5, 13, 15

U.S. Const., amend. VI .......................................................................................... 5, 15

**PETITION FOR REHEARING**

Appellant Michael Kail was convicted at trial of defrauding his former employer, Netflix, in violation of 18 U.S.C. §§1341, 1343, and 1346. The charges arose out of Mr. Kail's compensated advisory relationships with Netflix vendors: the government called the compensation the vendors paid him "kickbacks" for favorable treatment on Netflix contracts. Mr. Kail (and prosecution witnesses from every vendor) countered that the vendors paid him only for his services outside of Netflix—making his undisclosed compensation a violation of fiduciary duty, but not honest-services fraud.

The district court submitted this kickback theory to the jury as both honest-services fraud and traditional money-or-property fraud.[1] On each count of conviction the jury indicated via a special verdict form that it found the honest-services fraud theory proven. Therefore, the Panel opinion affirming rests largely on that theory. *United States v. Kail*, No. 21-10376, 2025 WL 1111494 (9th Cir. April 15, 2025) (not-precedential), attached hereto as Exhibit "A" ("Panel Op."), at 1 n.2.

---

[1]    Mr. Kail challenges this ruling on appeal as a constructive amendment. The Panel's treatment of it is one ground for rehearing, addressed third below.

Rehearing en banc, or by the Panel at least, is warranted for three

principal reasons.

*First*, the Panel says that by requiring proof of a "bribe or kickback" the

jury instructions clearly communicated that Mr. Kail could not be convicted for

accepting payment for lawful advisory services provided outside of his

employment.  Panel Op. at 4; *see* Appellant's Opening Brief ("AOB") at 48-49

(quoting instructions with citations).  Yet during deliberations, the jury

communicated its confusion and requested clarification on the scope of the

term "bribe or kickback":  "for there to be a bribe or kickback," it asked, must

the payment be made "in exchange for services beyond lawful services?"

District Court Docket Entry ("DDE") 227-1.[2]

The Panel does not even acknowledge the jury's question.  But the

question refutes the Panel's conclusion that the instructions were clear on this

outcome-determinative point.  Nor does the Panel acknowledge that the

district court modified, without advance notice to counsel, a defense

instruction it had agreed to give further defining "bribe or kickback"—a

modification that rendered the instruction meaningless on the point that

confused the jury.  As discussed below, affirming under these circumstances

---

[2]     The court gave no additional instruction in response.

opens a split with the Eleventh Circuit in *United States v. Aunspaugh*, 792 F.3d 1302 (11th Cir. 2015), and contravenes *Skilling v. United States*, 561 U.S. 358 (2010).

*Second*, the Panel also says that the jury instructions properly required the government to prove a false or fraudulent representation to the victim, Netflix, and the materiality of the misrepresentation to Netflix.  Panel Op. at 4-5.  Yet here it overlooks that the district court mistakenly ruled that honest-services fraud does not require proof of a misrepresentation to the victim, and declined to instruct on that element—a ruling that contravened Circuit and Supreme Court precedent.  Compounding the problem, on the materiality element the district court suggested an edit that would obfuscate the question of whose perspective governs, declaring that it would "leave that one vague"—which it did.  *See* AOB at 55-58.

How the Panel locates in the instructions elements the district court expressly declined to include is unclear.  The Panel appears to assume that because the jury knew that Netflix was the alleged victim, it must have supplied one missing element and resolved the intentional vagueness on another correctly, and on its own.  *See* Panel Op. at 5; Oral Arg. (audio) at 12:05–14:10.  But Netflix was the "victim" of Mr. Kail's breach of fiduciary duty whether or not the government proved the charged crime.  Only clear and

accurate instructions would distinguish the victim of a civil employment wrong from the victim of the honest-services fraud offense Congress defined and the grand jury charged. The jury did not get those instructions here.

*Third*, the Panel contravenes two lines of binding precedent when it concludes that submitting a property fraud theory to the jury did not constructively amend the Indictment, explaining that the Indictment uses the phrases "to obtain money and property" and "deprived of ... money and property." Panel Op. at 4. Merely reciting elements is insufficient to charge an offense; alleging "facts and circumstances" that correspond to them is essential. *E.g.*, *Hamling v. United States*, 418 U.S. 87, 117-18 (1974).

Factually, the grand jury alleged that Mr. Kail schemed "to obtain money and property" from third-party vendors, which "deprived Netflix of ... its money or property" by binding it to less-favorable contracts. Panel Op. at 4. But scheming "to obtain money or property" from third parties who were not deceived is not property fraud, whether or not the scheme would harm the alleged victim economically. Charging those facts and circumstances did not charge property fraud either.

That is why the district court was "thrown for a loop" and "didn't see it coming" when the government disavowed—three weeks before trial, almost three years post-indictment—its longstanding assertion that the Indictment

4

charged honest-services fraud alone, and added property fraud to the case for the first time. 2-ER-452.

The Panel deems irrelevant everything outside the text of the Indictment, on the mistaken view that Mr. Kail has not claimed that the government's last-minute addition of a new charging theory implicates rights other than those conferred by the Sixth Amendment. Panel Op. at 3 n.1. The Panel entirely overlooks Mr. Kail's contentions that the constructive amendment also violated his Fifth Amendment rights to grand-jury presentment and due process. *E.g.*, AOB 26; Reply at 14-15, 21-22 (discussed below at 15). Accordingly, the Panel does not address those issues at all. Yet the Department of Justice's responsibility for respecting the grand jury's historic role as a check on individual prosecutors' ability to marshal the machinery of the criminal process against an accused is an exceptionally important issue that warrants careful review it has not yet received.

## <u>Required Statement Under Fed. R. App. P. 40(b)</u>

I express a belief, based on reasoned and studied professional judgment, that the Panel opinion contravenes binding precedent of the U.S. Supreme Court including, *e.g.*, *Hamling v. United States*, 418 U.S. 87 (1974); *Skilling v. United States*, 561 U.S. 358 (2010); and *Neder v. United States*, 527 U.S. 1, 22-24 (1999). It also contravenes binding precedent of this Court, including, *e.g.*, *United States v. Lew*, 875 F.2d 219 (9th Cir. 1989), and *United States v. Milovanovic*, 678 F.3d 713, 727 (9th Cir. 2012) (en banc). Review by the Court en banc is necessary to maintain uniformity in circuit precedent and consistency with the teachings of the Supreme Court.

Moreover, the Panel opinion opens a split with the Eleventh Circuit, diverging from its opinion in *United States v. Aunspaugh*, 792 F.3d 1302 (11th Cir. 2015). And each of the issues presented in this Petition is exceptionally important, given the tangled legal history of prosecutions that conflate honest-services fraud with property fraud, and the constitutional significance of a court ruling allowing a DOJ prosecutor to take a person to trial on charges DOJ did not present to the grand jury.

## LEGAL AND FACTUAL BACKGROUND

Mr. Kail was indicted on April 26, 2018. 2-ER-605. Counts 1-19 of the Indictment charged wire fraud "in violation of Title 18, United States Code, Sections 1343 and 1346"; Counts 20-22 charged mail fraud with the same language, substituting Section 1341 for 1343. 2-ER-611. Counts 23-29 charged transactions in funds received as "bribes and kickbacks" from certain vendors, in violation of 18 U.S.C. §1957.

After several COVID-related delays, trial began on April 7, 2021. Just three weeks earlier, the government had filed revised proposed jury instructions and a revised verdict form retracting its previously unwavering position that the fraud counts charged honest-services fraud alone. For the first time it asserted that each charged a property-fraud theory as well. Over defense objection, the district court submitted both theories to the jury. *See* AOB at 21-25 (with citations); Panel Op. at 1 n.1.

Additional legal and factual background pertinent to these issues is set forth in Mr. Kail's opening Brief at 3-11, and in other portions of the AOB and Reply cited in this Petition.

## GROUNDS FOR REHEARING

**I.     The Panel splits with the Eleventh Circuit by tolerating an ambiguity in the instruction defining "bribes or kickbacks," and affirms even though the instructions permitted conviction on a theory that contravenes *Skilling*.**

The Panel upholds Mr. Kail's honest-services fraud convictions on the assumption that the jury already knew the answer to the question it asked the district judge:  whether the phrase "bribe or kickback" reaches a third-party's payment to a moonlighting employee in exchange for consulting "services" that violate his fiduciary duty to his employer, but are not favors he does for the third party in the course of his employment. *See* Panel Op. at 4.  The Panel insists—without acknowledging the jury's question—that the jury instructions made clear the very point the jury found unclear:  "for there to be a bribe or kickback," must the payment be "in exchange for services beyond lawful services"?  DDE 227-1.

As the Panel points out, the jury was told that the scheme must "involv[e] bribes or kickbacks."  Panel Op. at 4.  But that instruction did not stand alone.  The court also described bribes and kickbacks as paid "in exchange for services by a fiduciary."  AOB 48-49 (with citations).  Citing the Eleventh Circuit's *Aunspaugh* opinion, the defense objected below that those instructions did not distinguish the criminal exchange of payment for

"services" Mr. Kail provided the vendors as a Netflix employee from the non-criminal exchange of payment for "services" he provided them as a consultant. *Aunspaugh* reversed a conviction for that very reason, explaining that instructions explaining an employee-defendant's fiduciary obligations compound the problem (792 F.3d at 1306, 1308-10).

The district court was not persuaded, nor was the Panel. But the jury's request for clarification during deliberations shows that the Eleventh Circuit got it right in *Aunspaugh*. The Panel opinion opens an unwarranted circuit split.

The second instruction the Panel highlights was originally a defense-proposed instruction the court agreed to give. *See* Panel Op. at 4. Yet the Panel does not address the fact that the district court modified it *sua sponte*, without notice to the parties, in a way that left it irrelevant to the jury's confusion. Pretrial the court agreed to amplify the definition of "bribes and kickbacks" to explain that "undisclosed conflicts of interest, secret payments, or undisclosed self-dealing standing alone, is not sufficient" to prove them. But on its own, the court neutered that instruction to say only that those things are "not sufficient to constitute honest-services fraud"—a simple

truism a lay jury would naturally understand to mean "this conduct does not satisfy every element of the offense."[3]

The government argued over and over, even in summation, that undisclosed self-dealing by a fiduciary *is* a bribe or kickback, and thus supports an honest-services fraud conviction. *See* AOB 47-48. Unsurprisingly, the jury asked the court whether that was accurate. Though that theory contravenes *Skilling*, 561 U.S. at 409-10, the jury instructions did not refute it. By affirming, the Panel opinion contravenes *Skilling* too.

## II. The Panel approves the honest-services fraud instructions even though the district court expressly declined to require a misrepresentation to the alleged victim, and deliberately injected "vague[ness]" into the materiality element, contravening Circuit and Supreme Court precedent.

The Panel also says that the honest-services fraud instructions properly required the government to prove a misrepresentation to the charged victim, Netflix, and that the misrepresentation was material to Netflix. Panel Op. at 4-5. It overlooks that the district court expressly refused to write those requirements into the jury instructions.

---

[3]    Nor would a lay jury understand a term of art like "undisclosed self-dealing" without the context the defense-proposed instruction provided. *See generally, e.g.*, Internal Rev. Code, 26 U.S.C. §4941(a)(defining "self-dealing"); Calif. Corp. Code §5233(a)(same).

On the first point, the district court rejected the application of two landmark cases in Ninth Circuit jurisprudence. The Court is noted for its adherence to the "convergence" doctrine of fraud, which requires proof of a deceptive statement or omission directed to the party allegedly deprived of a protected interest. *United States v. Lew*, 875 F.2d 219, 222-23 (9th Cir. 1989). The *en banc* Court extended that requirement to honest-services fraud in *United States v. Milovanovic*, 678 F.3d 713, 727 (9th Cir. 2012). Yet when defense counsel requested a jury instruction requiring the government to prove a deceptive misrepresentation or omission directed to Netflix—which is also what the grand jury charged—the court accepted the government's contention that no statement or omission is required for honest-services fraud at all. The court expressly declined to require proof of that element, substituting "act" for the charged statement or omission to the victim. *See* AOB 56-57 (with citations).

Compounding the problem, the court then suggested broadening the materiality element to permit conviction if Mr. Kail's "act" was "material" to *any* "person or entity"—not limited to Netflix. Again the defense objected by referencing the holdings of *Lew* and *Milovanovic,* and of Supreme Court precedent including *Neder v. United States*, 527 U.S. 1, 22-24 (1999). Again the

11

court overruled the objection—inexplicably declaring "we can leave this [element] vague." The court did so. 1-ER-302; *see* AOB at 56-58.

The Panel nonetheless insists that the jury must have read the instructions to supply the elements the district court elected to leave out or to obfuscate—apparently on the theory that identifying Netflix as the alleged victim sufficed to communicate them. Panel Op. at 5; Oral Arg. (audio) at 12:05–14:10. But as noted above, Netflix was the "victim" of Mr. Kail's breach of fiduciary duty whether or not the government proved the charged crime. Clear and accurate instructions would have distinguished the criteria for finding Netflix the victim of a civil employment wrong versus finding it the victim of the charged honest-services fraud offenses.

Moreover, *Neder* and *Milovanovic* reject the Panel's suggestion that the general definition of "intent to defraud," which includes the "intent to cause the loss of honest services" through deceptive representations or omissions, supplies the missing elements. 527 U.S. at 22-23; 678 F.3d at 727; *cf.* Panel Op. at 5. Nothing in that instruction says the deception must be directed *to the victim*, as opposed to another participant in the scheme. The instruction does not require materiality at all.

And those requirements are far from obvious to laypeople. Indeed, requiring convergence puts this Court in the minority among the Courts of

Appeals.  Experienced government counsel insisted pretrial that honest-services fraud does not require a misrepresentation or omission to anyone, and a federal jurist suggested broadening "materiality" to include influence on any person or entity.  Nothing in the jury instructions would prompt lay jurors to fill the gaps the district court expressly elected to leave there.

**III.     The Panel contravenes binding precedent by deeming snippets of statutory language sufficient to charge property fraud, and by deeming the factual allegations a valid property-fraud theory.  It also fails entirely to address the grand-jury presentment and due process points Mr. Kail raises under the Fifth Amendment.**

Finally, the Panel contravenes two lines of binding precedent when finding no constructive amendment because the Indictment uses the phrases "to obtain money and property" and "deprived of ... money and property." Panel Op. at 4.  Reciting elements is insufficient to charge an offense; a valid indictment also alleges "facts and circumstances" that correspond to them. *E.g.*, *Hamling*, 418 U.S. at 117-18; *United States v. Lane,* 765 F.2d 1376, 1380 (9th Cir. 1985) (citing *Russell v. United States,* 369 U.S. 749, 763 (1962)).

Factually, the grand jury alleged that Mr. Kail schemed "to obtain money and property" from third-party vendors, which "deprived Netflix of ... its money or property" by binding it to less-favorable contracts.  Panel Op. at 4.

13

But scheming "to obtain money or property" from third parties who were not deceived is not property fraud, even if the scheme would harm the alleged victim economically. *Skilling*, 561 U.S. at 400. Indeed, the Supreme Court has recently reaffirmed that scheming to "obtain" the deceived victim's property is the hallmark of a property fraud scheme, regardless of whether the victim will suffer economic harm. *Kousisis v. United States*, 605 U.S. __, 145 S. Ct. 1382, 1388 (2025); *accord Kelly v. United States*, 590 U.S. 391, 402-03 (2020). Charging a scheme to obtain kickbacks from a third party does not charge property fraud any more than proving those "facts and circumstances" would have proved it.[4]

That is why the district court was "thrown for a loop" and "didn't see it coming" when the government added property fraud to the case three weeks before trial, almost three years post-indictment. 2-ER-452. The prejudice to Mr. Kail from that amendment far exceeds "disrupted [trial] preparation" (Panel Op. at 3 n.1). The government mixed-and-matched the elements of

---

[4]    Thus the constructive amendment issue cannot be separated from the issues the Panel sidesteps:  the jury instructions and prosecution evidence did not track a valid property-fraud theory either.  For all three issues, the elements and the facts essential to proving them are the controlling questions. *But see* Panel Op. at n.1.

property fraud and honest-services fraud and used them to reinforce each other at trial. *E.g.*, 11-ER-2860; AOB at 27-28, 38.

The Panel completely overlooks Mr. Kail's invocation of the Fifth Amendment rights to be tried only on charges returned by the grand jury, and to due process, in addition to the Sixth Amendment. *E.g.*, AOB 26 (citing *Russell*, 369 U.S. at 760–61 (discussing Fifth Amendment rights)); Reply at 14-15 (discussing import of government's failure to submit property-fraud theory to grand jury), 21-22 (discussing due process and fair notice). Accordingly, the Panel deems the constitutional rights to grand-jury presentment and to due process irrelevant, limiting its analysis to the text of the Indictment. Panel Op. at 3 n.1.

Yet as noted above, in this day and age few issues are more important to the integrity of the criminal justice system than preserving the grand jury's historic role as a bulwark for the citizenry against the charging whims of individual prosecutors who may wish to bypass it. Examining DOJ's obligation to respect the grand jury's role and to ensure due process for the accused is an exceptionally important issue that warrants the Court's careful review. Because the Panel overlooks Mr. Kail's invocation of the Fifth Amendment, to date that issue has received no review at all.

## CONCLUSION

For these reasons, Mr. Kail respectfully submits that rehearing by the Court *en banc* is warranted on each of these issues.  In the alternative, the Panel should grant rehearing on any issue the Court does not choose to rehear *en banc*.

Respectfully submitted,

 /s/ *Lisa A. Mathewson*
Lisa A. Mathewson

*Attorney for Appellant Michael Kail*

Date:  June 30, 2025

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to Circuit Rule 40-1, the attached petition for panel rehearing and/or rehearing en banc was prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and contains 3117 words.

 /s/ Lisa A. Mathewson
Lisa A. Mathewson

*Attorney for Appellant Michael Kail*

Date:  June 30, 2025

## CERTIFICATE OF SERVICE

I certify that on this date the foregoing Petition for Rehearing was served via this Court's CM/ECF system upon parties of record.

 /s/ Lisa A. Mathewson
Lisa A. Mathewson

*Attorney for Appellant Michael Kail*

Date:  June 30, 2025

17

EXHIBIT "A"

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 15 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10376 |
| Plaintiff-Appellee, | |
| | D.C. No. |
| | 5:18-cr-00172-BLF-1 |
| v. | |
| MICHAEL KAIL, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted March 27, 2025
Pasadena, California

Before: BOGGS,** FRIEDLAND, and BRESS, Circuit Judges.

Defendant-Appellant Michael Kail was convicted on eighteen counts of wire

fraud, in violation of 18 U.S.C. §§ 1343, 1346; three counts of mail fraud, in

violation of 18 U.S.C. §§ 1341, 1346; and seven counts of money laundering, in

violation of 18 U.S.C. § 1957. After calculating $1,505,000 in actual losses, the

_____

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Danny J. Boggs, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

district court sentenced Kail to thirty months per count to be served concurrently. Kail now appeals his convictions and sentence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review de novo whether an indictment was constructively amended. *United States v. Luong*, 965 F.3d 973, 984 (9th Cir. 2020). We review the "formulation of jury instructions for abuse of discretion, but review de novo whether those instructions correctly state the elements of the offense and adequately cover the defendant's theory of the case." *United States v. Liew*, 856 F.3d 585, 595-96 (9th Cir. 2017). When reviewing whether evidence was sufficient to support a verdict, we "determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *United States v. McCarron*, 30 F.4th 1157, 1162 (9th Cir. 2022) (emphasis omitted) (quoting *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc)), and "resolv[e] all conflicts in the evidence in favor of the prosecution," *United States v. Rodriguez*, 546 F.2d 302, 306 (9th Cir. 1976). We review de novo Sixth Amendment public-trial claims. *United States v. Allen*, 34 F.4th 789, 794 (9th Cir. 2022). In determining whether the district court erred in sentencing, "we review the district court's interpretation of the Guidelines de novo, its application of the Guidelines to the facts for abuse of discretion, and its factual findings . . . for clear error." *United States v. Gadson*, 763 F.3d 1189, 1219 (9th Cir. 2014).

1. Kail's challenges to his convictions for wire or mail fraud all fail.  As an initial matter, Kail's argument that the indictment was constructively amended to add a property theory of liability misconstrues the wording of the indictment.  The indictment charged Kail with devising a scheme "*to obtain money and property* by means of materially false and fraudulent pretenses, representations, promises, and omissions," which "deprived Netflix of . . . its *money and property* by enabling the vendors to . . . negotiate more favorable contracts with Netflix than they would have been able to obtain."  The indictment therefore gave Kail "fair notice of the charges" brought under a property theory of liability.  *United States v. Holmes*, 129 F.4th 636, 661 (9th Cir. 2025) (quoting *Luong*, 965 F.3d at 985).[1]

In any event, Kail's fraud convictions can all be sustained under the honest-services theory of liability, which the indictment also charged.[2]  Kail's challenges

---

[1] Kail argues that the Government's decision to add the property fraud theory three weeks prior to trial was prejudicial because the Government had represented to Kail over almost three years that it was pursuing only an honest-services theory.  But whether the Government's strategy allegedly disrupted Kail's preparation is irrelevant to the constructive-amendment issue, which in this case turns on the wording of the indictment on its face, not on the Government's representations about what the indictment meant.  *See United States v. Bellot*, 113 F.4th 1151, 1156 (9th Cir. 2024).  Nor has Kail raised any other separate claim based on the Government's claimed delay in notifying Kail that it was also pursuing a property fraud theory.

[2] Because Kail's fraud convictions can be affirmed under an honest-services theory, any instructional or sufficiency-of-evidence error pertaining to a property theory of liability was harmless.  The jury here was asked to separately find whether Kail was guilty of Counts 1 to 22 under a property theory, under an

to the honest-services jury instructions fail.  Kail first argues that the instructions did not cover his defense theory because they allowed the jury to convict Kail for receiving payment in exchange for lawful advising services.  But, contrary to Kail's argument, the instructions provided that the Government must prove that "the defendant knowingly devised or participated in a scheme or plan to defraud Netflix, Inc. of its right to his honest services," and that "to find the defendant guilty of this offense, you must find that the defendant devised or participated in a plan or course of action involving bribes or kickbacks given or offered to the defendant."  The instructions further clarified that "[u]ndisclosed conflicts of interest, secret payments or undisclosed self-dealing alone, is not sufficient to constitute honest services mail fraud."  Taken as a whole, the instructions adequately covered Kail's defense theory because they made clear that merely providing lawful advising services without disclosure to Netflix—though it would be undisclosed self-dealing—would not be honest-services fraud.

Kail next argues that the instructions omitted essential elements of honest-services fraud by allowing conviction without proof of any misrepresentations

---

honest-services theory, or under both theories.  Because the jury found Kail guilty under the honest-services theory for each count on which he was convicted, no wire or mail fraud conviction depended on the jury's finding Kail guilty under the property theory.  We may therefore affirm Kail's wire or mail fraud convictions under an honest-services theory alone.  *See United States v. Pelisamen*, 641 F.3d 399, 406 (9th Cir. 2011).

directed at Netflix.  That argument is also unavailing.  The district court instructed

that an element of honest-services fraud is an "intent to defraud by depriving

Netflix, Inc. of the right of honest services," and that to act with "intent to

defraud . . . means to act knowingly and with the specific intent to use false or

fraudulent pretenses, representations, promises or omissions to cause loss of honest

services."  The instructions further clarify: "What the government must prove is

that the defendant knowingly devised or participated in a scheme or artifice to

defraud Netflix, Inc. of its right to the defendant's honest services through bribes

or kickbacks."  Read together, those instructions are best understood to require

proof that Kail made misrepresentations or omissions that were directed at Netflix.

Kail claims that the instructions "did not require proof of a *material*

misrepresentation or omission," but he again reads the relevant instructions in

isolation rather than in context.  As noted above, the instructions required Kail to

act with "the specific intent to use false or fraudulent pretenses, representations,

promises or omissions to cause loss of honest services."  The instructions further

required the jury to find that "Kail's act was material; that is, the act had a natural

tendency to influence, or was capable of influencing, a person's or entity's acts."

Thus, when read in context, the jury instructions required the jury to find that

Kail's misrepresentations or omissions were material to Netflix.

Sufficient evidence also supported Kail's convictions under an honest-

services theory.[3]  Although Kail observes that "every vendor witness . . . testified under oath that they had no [quid pro quo] agreement" with Kail, the Government presented evidence to the contrary.  As the district court explained, "[w]hile witnesses implicated in the scheme unsurprisingly distanced themselves from the bribes and kickbacks during live testimony, there was ample contemporaneous documentary evidence that illustrated a quid pro quo scheme."  Our independent review of the record confirms this.  "[R]esolving all conflicts in the evidence in favor of the prosecution," we conclude that a rational juror could have found beyond a reasonable doubt that Kail had a quid pro quo with each relevant vendor. *Rodriguez*, 546 F.2d at 306.

2.  The district court did not err in instructing the jury that, as to the money-laundering counts, "[t]he government is not required to prove that Mr. Kail knew that his acts or omissions were unlawful."  Although an essential element of money laundering is the defendant's knowledge that the transactions at issue involved criminally derived property, *see United States v. Lonich*, 23 F.4th 881, 899 (9th Cir. 2022), *overruled on other grounds by United States v. Lucas*, 101 F.4th 1158

---

[3] Kail only challenges whether sufficient evidence supported the existence of a quid pro quo between Kail and each of the relevant vendors.  Any other sufficiency-of-evidence challenge pertaining to the honest-services theory is not "clearly and distinctly" raised in the opening brief  and is deemed forfeited. *See Avila v. L.A. Police Dep't*, 758 F.3d 1096, 1101 (9th Cir. 2014) (quoting *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009)).

(9th Cir. 2024), the defendant need not know whether the act of money laundering itself is unlawful. *See* 18 U.S.C. § 1957(a); *United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994).  The jury instructions stated that "[i]n regard to Counts 23 through 29, charging Money Laundering . . . [t]he government is not required to prove that Mr. Kail knew that his acts or omissions were unlawful."  The specific reference to the money-laundering counts, in addition to a later instruction that "[t]he government must prove that Mr. Kail knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense," correctly stated the knowledge element of money laundering. *United States v. Knapp*, 120 F.3d 928, 932 (9th Cir. 1997).

3.   The district court did not err—let alone plainly err—in closing the courtroom.[4]  A total courtroom closure is permitted when the closure is narrowly tailored to serve an overriding interest.  *Allen*, 34 F.4th at 797.  Here, the courtroom closure served the overriding interest of limiting the spread of COVID and was narrowly tailored because, consistent with *Allen*, the district court provided adequate "alternatives" to a public trial by granting all specific requests for in-person attendance.  *Id.* at 799.  In addition, a live audio feed and trial transcripts were made available to the public.  *See United States v. Hougen*, 76

---

[4] We review the district court's courtroom closure for plain error because Kail's request that certain parties attend his trial in person did not constitute a timely objection to the issue he now presses on appeal.

F.4th 805, 811 (9th Cir. 2023).  Thus, Kail has not shown error in the courtroom

closures.

4.  The district court did not err in its sentencing calculation.  The district

court calculated $1,505,000 in actual losses—$120,000 from a contract with

Docurated and $1,385,000 from a contract with Vistara.  Record evidence supports

those factual findings.  As to Docurated, there was evidence that Docurated "was

not ever a good fit for Netflix because [Docurated's product] did not work

with . . . [Netflix's] Mac products" and that Netflix's in-house products could

perform the same function.  And as to Vistara, there was evidence that the Vistara

product was never rolled out, that Vistara "was never trusted," and that "Netflix

had other technology that was already doing a better job."  Although Kail points to

countervailing evidence in the record suggesting that Netflix received at least some

value from the contracts with Docurated and Vistara, that countervailing evidence

does not show that the district court clearly erred in finding the Government's

evidence more compelling.

**AFFIRMED.**