No. 21-10376

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

**UNITED STATES OF AMERICA**,
*Plaintiff—Appellee*,

*v.*

**MICHAEL KAIL,**
*Defendant—Appellant.*

From The United States District Court
For The Northern district of California
The Honorable Beth Labson Freeman
Case No. CR-18-00172

**APPELLANT'S CORRECTED MOTION TO STAY MANDATE PENDING CERTIORARI PETITION TO SUPREME COURT**

J. Alex Little
Zachary C. Lawson
Litson PLLC
54 Music Square E, Suite 300.
Nashville, Tennessee 37203

*Counsel for Appellant*

August 14, 2025

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ................................................................................ 1

  I.   "The Ninth Circuit improperly evaluated the jury instructions defining "bribes and kickbacks." ........................ 2

  II.  The Court's decision crates a circuit split with the Eleventh Circuit regarding whether ambiguous jury instructions defining "bribes and kickbacks" require reversal under *Skilling* .............................................................. 7

  III.  The Supreme Court should decide whether jury instructions must distinguish between criminal kickbacks and lawful self-dealing under the honest services fraud statute ............................................................. 11

CONCLUSION .................................................................................. 13

# TABLE OF AUTHORITIES

Page No.

**Cases**

*McNally v. United States*, 483 U.S. 350 (1987) ................................... 2, 3

*Skilling v. United States* ............................................................. *passim*

*United States v. Aunspaugh*, 792 F.3d 1302 (11th Cir. 2015) ........ *passim*

**Statutes**

18 U.S.C. § 1341 ..................................................................................... 2

18 U.S.C. § 1343 ..................................................................................... 2

18 U.S.C. § 1346 ............................................................................ *passim*

41 U.S.C. § 52 ......................................................................................... 3

**Other Authorities**

Federal Rule of Appellate Procedure 41 .................................................. 1

Sup. Ct. R. 10 .......................................................................................... 1

## INTRODUCTION

Appellant Michael Kail's forthcoming petition for certiorari to the Supreme Court appeal raises a substantial question that the Court is likely to consider on the merits, and this Court should in turn stay its mandate until his petition is decided. Specifically, Appellant's case presents the substantial question whether jury instructions in honest services fraud cases must distinguish between criminal kickbacks and lawful self-dealing. The Ninth Circuit decided this important federal question in a way that splits with the Eleventh Circuit and contradicts *Skilling v. United States*, 561 U.S. 358 (2010).

Under Federal Rule of Appellate Procedure 41, this Court will issue a stay of the mandate pending the filing of a cert petition upon a "show[ing] that the petition would present a substantial question and that there is good cause for a stay." In deciding whether to grant a certiorari petition, the Supreme Court considers whether "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter; [or] has decided an important federal question in a way that conflicts with relevant decisions of [the Supreme] Court." Sup. Ct. R. 10.

1

I. **The Ninth Circuit improperly evaluated the jury instruction defining "bribes and kickbacks."**

As has been covered at length in this case, 18 U.S.C. § 1341 (Wire Fraud) and § 1343 (Mail Fraud) are limited in scope to schemes designed to defraud a victim of traditional property rights, i.e., money or property. *McNally v. United States*, 483 U.S. 350, 360 (1987). *McNally* specifically limited the application of those statutes to exclude the "intangible right to honest services." The following year, Congress enacted 18 U.S.C. § 1346 to restore "the intangible right to honest services" to the ambit of §§ 1341 and 1343; however, Congress did not define the boundaries of that intangible right. The Supreme Court made the boundary clear in *Skilling*, holding that "§ 1346 covers only bribery and kickback schemes." *Skilling*, 561 U.S. at 368.

In *Skilling,* the Court expressed confidence that limiting the boundaries of § 1346 to bribery and kickback schemes would prevent vagueness in its application. *Id*. at 412-13. To underscore this point, the Court pointed to both pre-*McNally* caselaw as well as federal statutes that "proscrib[e]—and defin[e]—similar crimes," as a means by which to judge when a scheme involves bribery or a kickback. *Id*. Pre-*McNally* caselaw narrowed application to "fraudulent schemes to deprive another

2

of honest services through bribes or kickbacks supplied by a third party who had not been deceived." *Id.* at 404. Congress has defined a "kickback" to mean "any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to [enumerated persons] for the purpose of improperly obtaining or rewarding favorable treatment in connection with [enumerated circumstances]." 41 U.S.C. § 52(2); *Id.* at 412-13.

Further, the Court clarified what does *not* constitute bribery or a kickback. In *Skilling*, the government advocated for § 1346 to cover "undisclosed self-dealing by a . . . private employee—i.e., the taking of official action by the employee that furthers his own undisclosed financial interests while purporting to act in the interests of those to whom he owes a fiduciary duty." *Id.* at 409-410. The Court rejected this argument, reiterating that § 1346 does not extend to undisclosed self-dealing, but is limited to bribery and kickback schemes only. "[N]o other misconduct falls within § 1346's province." *Id.* at 412.

The facts of this case starkly illustrate this distinction. The government alleged that Mr. Kail accepted payments from Netflix vendors in exchange for steering business to them—a classic quid pro quo

3

kickback scheme where payments are made to secure favorable treatment. But Mr. Kail defended against these charges by offering substantial evidence that he provided legitimate consulting services to these vendors pursuant to formal Advisor Agreements in exchange for lawful compensation. Under this theory, any payments Mr. Kail received were for actual services rendered, not bribes or kickbacks to deprive Netflix of his honest services.

This distinction is outcome-determinative. If the payments were for consulting services—even if undisclosed to Netflix—that constitutes mere self-dealing, which *Skilling* expressly excludes from § 1346. Only if the payments were made to induce Mr. Kail to steer business to the vendors without regard to Netflix's best interests would they constitute the kind of bribery or kickback scheme that § 1346 reaches.

The jury instructions in Mr. Kail's case did not distinguish between lawful payments received for services rendered—even if such payments were undisclosed self-dealing—and unlawful payments that were alleged to be kickbacks. The instruction at issue under the elements of Mail Fraud – Honest Services reads as follows:

> Second, the scheme or plan consisted of a bribe or kickback in exchange for Mr. Kail's services;

4

1-ER-273. This element fails to instruct the jury as to what services must be exchanged to constitute the bribe or kickback. Compounding this problem, under the definition of "The Bribe or Kickback in Exchange for Services," the following instruction is included:

> [B]ecause people rarely act for a single purpose, the giver need not have offered or provided the thing of value only in exchange for specific services, and the defendant need not have solicited or accepted the thing of value only in exchange for those services. If you find beyond a reasonable doubt that the giver offered or provided a thing of value in exchange for the performance of services, then it makes no difference that the giver may also have had another lawful motive for providing a thing of value. Likewise, if you find beyond a reasonable doubt that the defendant solicited or received a thing of value in exchange for the services, then it makes no difference that the defendant may also have had another lawful motive for soliciting or accepting the thing of value.

1-ER-275-276. This definition encompasses not only kickbacks, but any payment in exchange for "the performance of services"—any services, whether lawful services that merely constitute self-dealing, or unlawful kickbacks that are forbidden under § 1346. The instruction thus allowed the jury to convict Mr. Kail based on a finding that he received payment for consulting services—precisely the theory of his defense and precisely the conduct that Skilling removed from § 1346's reach. This ambiguity is

5

not cured by any other instruction to the jury. *See* Appellant's Opening Brief ("AOB") at 54. Not only did the court deny Mr. Kail's request for clarifying jury instructions that would have captured his defense theory, but it also included instructions that invited the jury to convict on legally insufficient grounds.

The problematic nature of these instructions became evident when the jury demonstrated confusion about these very issues during deliberations. The first question the jury had was whether "for there to be a bribe or kickback does the giver have to know it's for [sic] exchange for services beyond lawful services?" AOB at 54. The Court's analysis failed to recognize that this question revealed the exact ambiguity *Skilling* sought to eliminate: whether § 1346 covers payment for lawful services. And the jury's confusion on this outcome-determinative issue created a substantial risk that the jury would convict based on conduct that *Skilling* placed outside § 1346's reach, thereby violating Mr. Kail's constitutional rights.

Instead, this Court held that, "taken as a whole," the instructions in Mr. Kail's case were adequate to cover his defense theory "because they made clear that merely providing lawful advising services without

6

disclosure to Netflix . . . would not be honest services fraud." To support its conclusion, the court stated the following:

> [T]he instructions provided that the Government must prove that "the defendant knowingly devised or participated in a scheme or plan to defraud Netflix, Inc. of its right to his honest services," and that "to find the defendant guilty of this offense, you must find that the defendant devised or participated in a plan or course of action involving bribes or kickbacks given or offered to the defendant." The instructions further clarified that "[u]ndisclosed conflicts of interest, secret payments or undisclosed self-dealing alone, is not sufficient to constitute honest services mail fraud."

Panel Op. at 4. While purporting to not judge the instructions in isolation, however, the Court isolated only the portions of the instructions that support its opinion. In doing so, the Court ignored the definitional instruction that expressly permitted conviction for any "thing of value in exchange for the performance of services"—language broad enough to encompass Mr. Kail's lawful consulting services.

II. **The Court's decision creates a circuit split with the Eleventh Circuit regarding whether ambiguous jury instructions defining "bribes and kickbacks" require reversal under *Skilling*.**

By upholding Mr. Kail's conviction based on an ambiguous jury instruction regarding "bribes and kickbacks," the Ninth Circuit has split with the Eleventh Circuit's holding in *United States v. Aunspaugh*, 792

7

F.3d 1302, 1310 (11th Cir. 2015). Both cases present an honest services fraud conviction on nearly identical fact patterns. But *Aunspaugh*'s conviction was reversed to comport with the Supreme Court holding in *Skilling*, while the Ninth Circuit has affirmed conviction in contravention of that holding.

In *Aunspaugh*, defendants' conviction for honest services fraud was reversed due to a jury instruction that allowed defendants to be convicted in the absence of a bribe or kickback, in contravention to the Supreme Court holding in *Skilling*. *Aunspaugh* at 1310. Defendants—a husband and wife—owned Ener-Phase Electric, which was subcontracted to perform work for Glades Utility Service (GUS). *Id.* at 1305. Defendants began making payments to the general manager of GUS for his role in providing a GUS employee to perform work subcontracted to Ener-Phase. *Id.* GUS employees were permitted to work on projects outside their normal work duties at GUS, so long as such work was disclosed. *Id.* The GUS employee's work on behalf of Ener-Phase was not disclosed to GUS, nor did the general manager of GUS disclose that he was accepting payment from defendants for his role in the arrangement. *Id.*

The government alleged that payments made to the general manager of GUS were illegal kickbacks, paid to ensure GUC directed jobs to Ener-Phase that, in the absence of the kickback, would not otherwise have been directed to Ener-Phase; defendants asserted that the payments were not kickbacks, but lawful "compensation for services rendered." *Id.* At trial, defendants objected to the district court's jury instructions as improper under *Skilling*, arguing that the instructions did not differentiate between a "kickback" and self-dealing. Defendants were overruled and convicted of honest services fraud. *Id.* at 1305.

On appeal, the Eleventh Circuit was clear: Defendants were "entitled to have the jury apply the law as set out in *Skilling* . . . that is, to be convicted only if the jury found, based on proper instructions, that the payments [made by defendants to a third party] were kickbacks." *Id.* at 1307. The jury instruction at issue read as follows:

> A "kickback" includes *any kind of secret payment* or reward a person gives to an employee who has been dealing in the course of employment with that person *so that the employee's personal financial interest interferes with the employee's obligation to get the best deal for the employer.*

*Id.* at 1309 (emphasis in the original). The court noted that "[a]n employee who steers work to himself usually acts for his own self-

9

interest," and that self-interest is often at odds with an employee's fiduciary obligations to the employer. *Id.* "That is the very definition of self-dealing." *Id.* The jury instruction permitted self-dealing to fall under the definition of a "kickback," allowing the jury to treat the two concepts as interchangeable. *Id.* The court found that the instructions contravened *Skilling* because they failed to "require the jury to acquit" if the scheme only involved self-dealing but no kickbacks. *Id.* at 1310. This required reversal of the honest services fraud convictions. *Id.*

Mr. Kail's case proceeds on nearly identical factual circumstances and legal issues, but unlike the Eleventh Circuit, the Ninth Circuit has affirmed the conviction in contravention of *Skilling*. As cited and described above, the jury instructions at issue in Mr. Kail's case are erroneous in precisely the same manner as in *Aunspaugh*: the instructions defining a "kickback" include a description of mere self-dealing, which invites a jury to convict absent a bribe or kickback. Under *Skilling*, a conviction based on self-dealing alone under § 1346 is forbidden. However, rather than reversing Mr. Kail's conviction based on this departure from Supreme Court precedent, the Ninth Circuit has instead affirmed it under § 1346 based on jury instructions that allowed

10

for conviction in contravention to *Skilling*. This opens a circuit split with the Eleventh Circuit's application of the law. Mr. Kail will petition the Supreme Court to reverse his conviction to comport with its holding in *Skilling*, and to resolve the circuit split the Ninth Circuit opened by affirming Mr. Kail's conviction.

### III. The Supreme Court should decide whether jury instructions must distinguish between criminal kickbacks and lawful self-dealing under the honest services fraud statute.

This case raises a substantial question regarding the clarity required in jury instructions to distinguish between actionable kickbacks and non-actionable self-dealing under § 1346. *Skilling* established that § 1346 "covers only bribery and kickback schemes," explicitly excluding "undisclosed self-dealing" from the statute's reach. 561 U.S. at 368, 409-410. But *Skilling* did not address what level of clarity jury instructions must provide to ensure that juries can properly distinguish between these categories. This distinction is critical because both kickbacks and self-dealing often involve the same basic elements: an employee receiving payments from a third party while owing duties to an employer. The difference lies in the nature and purpose of those payments.

11

The circuit split demonstrates the pressing need for Supreme Court guidance on this instructional standard. The Eleventh Circuit in *Aunspaugh* required reversal where jury instructions defined kickbacks broadly enough to encompass self-dealing, reasoning that such ambiguity violated *Skilling*'s mandate. 792 F.3d at 1309-10. By contrast, the Ninth Circuit here affirmed despite jury instructions that permitted conviction for any payment "in exchange for the performance of services"—language that encompasses both unlawful kickbacks and the lawful consulting services that *Skilling* removed from § 1346's scope. This divergence creates uncertainty for both prosecutors and defense counsel about what instructional clarity the Constitution requires.

Resolution of this question would provide much-needed guidance to lower courts grappling with post-*Skilling* jury instructions in honest services cases. The question is not merely academic. As this case demonstrates, ambiguous instructions can lead to jury confusion about the fundamental elements of the offense. When jurors ask whether kickbacks require proof of "services beyond lawful services," they are highlighting the very line-drawing problem that *Skilling* sought to resolve. The Supreme Court should clarify whether trial courts must

12

provide instructions to ensure that § 1346 convictions rest on conduct that truly falls within the statute's narrowed scope.

Good cause for the stay exists because Mr. Kail faces a thirty-month sentence that, without a stay, will be substantially or entirely served before the Supreme Court can rule on the merits of his petition. The substantial questions presented here—involving the proper scope of honest services fraud prosecutions and the circuit split on jury instruction requirements—warrant preserving the Court's ability to provide meaningful relief should it grant certiorari.

## CONCLUSION

Mr. Kail has shown that his petition for writ of certiorari to the Supreme Court would present a substantial question, which constitutes good cause for a stay. For the reasons herein, this Court should grant his motion, under Federal Rule of Appellate Procedure 41, and issue an order to stay the mandate in this case for 90 days, pending the consideration of a petition for a writ of certiorari in the Supreme Court.

Respectfully submitted,

By: */s/ J. Alex Little*
J. ALEX LITTLE (TN BPR #029858)
ZACHARY LAWSON (TN BPR #036092)
LITSON PLLC
54 Music Square E, Suite 300
Nashville, TN 37203
Telephone: (615) 985-8189
alex@litson.co
zack@litson.co

*Counsel for Michael Kail*

## CERTIFICATE OF SERVICE

I certify that on this date the foregoing Motion to Stay Mandate Pending Certiorari Petition to Supreme Court was served via this Court's CM/ECF system upon parties of record.

>  */s/ J. Alex Little*
> J. Alex Little
>
> *Attorney for Appellant Michael Kail*

Date: August 14, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** _____21-10376_____

I am the attorney or self-represented party.

**This brief contains __2,633__ words,** including ___0____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f).

The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of FRAP 27(d)(2).

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __/s/ J. Alex Little_____ **Date** _____8/14/2025_____
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Form 8        Rev. 12/01/22